

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

WILLIAM STARKS,

    Plaintiff,

v.                                            Civil Action No. 3:08CV710

DR. ABBASI,

    Defendant.

## MEMORANDUM OPINION

Plaintiff, a Virginia prisoner proceeding *pro se* and *in forma pauperis*, brings this civil action. Plaintiff brings the following claim:

    Claim 1      Defendant violated Plaintiff's Eighth Amendment[1] right to adequate medical treatment of his thumb.

Defendant has filed a motion for summary judgment. Plaintiff has failed to respond. This matter is ripe for decision.

## I. MOTION FOR SUMMARY JUDGMENT STANDARD

Summary judgment is to be rendered "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). It is the responsibility of the party seeking summary judgment to inform the court of the basis for the motion, and to identify the parts of the record which demonstrate the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary

---

[1] "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const. amend. VIII.

judgment motion may properly be made in reliance solely on the pleadings, depositions, answers to interrogatories, and admissions on file." *Id.* at 324 (internal quotation marks omitted). When the motion is properly supported, the nonmoving party must go beyond the pleadings and, by citing affidavits or "'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* (*quoting* former Fed. R. Civ. P. 56(c) and 56(e)). When reviewing a summary judgment motion, a court "must draw all justifiable inferences in favor of the nonmoving party." *United States v. Carolina Transformer Co.*, 978 F.2d 832, 835 (4th Cir. 1992) (*citing Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). Nevertheless,"'Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment.'" *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994) (*quoting Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915 & n.7 (5th Cir. 1992)).

Defendant has supported his motion with affidavits and medical records. Plaintiff has submitted only an unsworn complaint, the allegations within which the Court may not consider.[2] *See United States v. White*, 366 F.3d 291, 300 (4th Cir. 2004) (emphasizing that unsworn argument does not constitute evidence). In light of the foregoing principles and submissions, the following facts are established for purposes of the motion for summary judgment.

## II. UNDISPUTED FACTS

Plaintiff was booked into Riverside Regional Jail on November 13, 2006. On April 2, 2008, Plaintiff complained to the nursing staff that he had injured his right thumb when he was

---

[2] Plaintiff's complaint was merely acknowledged before a notary. *See Wisniewski v. Johnson*, 286 S.E.2d 223, 224 (Va. 1982) (emphasizing the "marked difference between acknowledging a signature and signing a document under oath").

2

coming down from an upper bunk. Nursing staff examined Plaintiff's thumb and referred him for examination by a physician. On April 3, 2008, Defendant examined Plaintiff's right thumb. Plaintiff reported that, although his thumb had been swollen with limited range of motion, the swelling had gone down. Defendant found that Plaintiff's thumb was still swollen with mild yellowish red coloration, that his range of motion for the thumb was good, and that there was no significant tenderness. Defendant determined that Plaintiff had only a mild infection in the thumb and prescribed an antibiotic, along with Motrin to make Plaintiff more comfortable while the infection cleared.

On April 17, 2008, Plaintiff complained to the nursing staff that he was still having problems with his right thumb and reported that he was still having pain occasionally. The nurse noted swelling and limited range of motion in the thumb. On April 18, 2008, Defendant examined Plaintiff's thumb again. Although Plaintiff's thumb was still slightly swollen and red, it appeared to be improving. Based upon Defendant's examination of Plaintiff's thumb, and his improved symptoms after the round of antibiotics, Defendant concluded that Plaintiff had only a mild infection in his thumb, which was improving and would continue to clear up with another round of antibiotic. Defendant therefore prescribed a two-week round of antibiotics.

On April 24, 2008, Plaintiff's mother called and said to the nursing staff that the antibiotic was making her son sick, that he was experiencing weight loss and pain, and that she wanted her son to have an x-ray of his thumb. Plaintiff had not reported any of these complaints to Defendant at the April 18, 2008 examination. The nursing staff brought the telephone call to Defendant's attention. Because Defendant had examined Plaintiff's thumb only a few days before and observed during that examination that his thumb still appeared to have only a mild

infection that was responding to the antibiotic, Defendant did not conclude that any different or further medical treatment for Plaintiff's thumb was medically indicated at that time.

In mid-July 2008, Plaintiff complained to the nursing staff of pain, swelling, and limited range of motion in his right thumb. The nursing staff noted yellow drainage from the nail bed of Plaintiff's right thumb, and a moderate amount of swelling and limited range of motion. On July 18, 2008, Defendant examined Plaintiff's right thumb again. Plaintiff complained that he experienced pain when he flexed the thumb. Defendant noted mild swelling, with a good range of motion except for pain upon flexion. Defendant began to consider the possibility that Plaintiff was suffering from tendonitis. Defendant discussed with Plaintiff various options at that point, and Plaintiff decided to proceed with an orthopaedic consultation. Defendant referred Plaintiff to the Orthopaedic Clinic at the Medical College of Virginia ("MCV").

On August 6, 2008, an x-ray taken at MCV indicated that Plaintiff had an old fracture of his right thumb and a deformity in that nail. This x-ray does not indicate whether Plaintiff had fractured his thumb when coming down from the upper bunk just prior to when the nursing staff saw him on April 2, 2008, or at some earlier time. The orthopaedic specialist noted that no follow-up was needed with respect to Plaintiff's thumb.

### III. FAILURE TO PROVIDE MEDICAL CARE

In order to prevail on an Eighth Amendment denial of medical care claim, a prisoner must demonstrate "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). To establish deliberate indifference, a prisoner must show that a particular defendant actually knew of and disregarded a substantial risk of serious harm to his person. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

4

"Deliberate indifference is a very high standard-a showing of mere negligence will not meet it." *Grayson v. Peed*, 195 F.3d 692, 695 (4th Cir. 1999) (*citing Estelle*, 429 U.S. at 105-06). "To establish that a health care provider's actions constitute deliberate indifference to a serious medical need, the treatment must be so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Miltier v. Beorn*, 896 F.2d 848, 851 (4th Cir. 1990) (*citing Rogers v. Evans*, 792 F.2d 1052, 1058 (11th Cir. 1986)). In this regard, the right to medical treatment is limited to that treatment which is medically necessary and not to "that which may be considered merely desirable." *Bowring v. Godwin*, 551 F.2d 44, 48 (4th Cir. 1977).

In evaluating a prisoner's complaint regarding medical care, the court is mindful that "society does not expect that prisoners will have unqualified access to health care" or to the medical treatment of their choosing. *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (*citing Estelle*, 429 U.S. at 103-04). Furthermore, absent exceptional circumstances, an inmate's disagreement with medical personnel with respect to a course of treatment is insufficient to state a cognizable constitutional claim, much less to demonstrate deliberate indifference. *See Wright v. Collins*, 766 F.2d 841, 849 (4th Cir. 1985) (*citing Gittlemacker v. Prasse*, 428 F.2d 1, 6 (3d Cir. 1970)).

Plaintiff has failed to rebut Defendant's contention that he rendered the level of treatment that was necessary based on his medical judgment. No competent evidence indicates that Defendant knew of and disregarded any serious risk of harm to Defendant's thumb.[3] Indeed, the record demonstrates that Defendant responded to Plaintiff's complaints, and arranged for a

---

[3] Although Defendant acknowledges that he did not take any response to Plaintiff's mother's alert that Plaintiff's antibiotics were causing illness, Plaintiff does not seek to recover for any such injury.

5

consultation with a specialist as soon as it appeared that his initial diagnosis was in error. *See Johnson v. Quinones*, 145 F.3d 164, 168-70 (4th Cir. 1998) (concluding that incorrect diagnosis does not establish deliberate indifference). Defendant's motion for summary judgment will be GRANTED. Plaintiff's claims will be DISMISSED. This action will be DISMISSED.

It is so ORDERED.

/s/
James R. Spencer
Chief United States District Judge

Date: 7-15-10
Richmond, Virginia